IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


WALTER LEON JONES,
       Petitioner,

vs.                                                    Case No. 3:09cv12/MCR/EMT

EDWIN G. BUSS,[1]
       Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer and relevant portions of the state court record (Doc. 16).  Petitioner filed a reply (Doc. 23).

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are undisputed and established by the state court record (*see* Doc. 16, Exhibits).[2]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, with one count of battery on a law enforcement officer (Count 1), one

---

[1] Edwin G. Buss succeeded Walter A. McNeil as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (Doc. 16).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

count of resisting an officer with violence (Count 2), one count of giving a false name to an officer (Count 3), and one count of resisting an officer without violence (Count 4) (*see* Ex. L at 3–4). Following a jury trial on April 28, 2004, Petitioner was convicted as charged on all counts (Ex. C, Ex. L at 17).   On May 13, 2004, Petitioner was sentenced to concurrent terms of 109 months of imprisonment on Counts 1 and 2, with pre-sentence credit of 188 days, and time served on Counts 3 and 4 (Ex. L at 19–37, 48–53).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA").   The First DCA affirmed the judgment per curiam without written opinion on December 19, 2005, with the mandate issuing January 4, 2006 (Exs. H, K).   Jones v. State, 918 So. 2d 295 (Fla. 1st DCA 2005) (Table).   Petitioner did not seek further review.

On July 7, 2006, Petitioner filed a pro se motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. L at 58–82).   The state circuit court held a limited evidentiary hearing on one of Petitioner's nine claims (Ex. N at 414–15, 421–23).   On July 11, 2007, the state circuit court denied Petitioner's Rule 3.850 motion (*id.* at 454–68).   Petitioner appealed the decision to the First DCA.   On May 1, 2008 the First DCA affirmed the decision per curiam without written opinion, with the mandate issuing October 6, 2008 (Exs. R, U).   Jones v. State, 989 So. 2d 1187 (Fla. 1st DCA 2008) (Table).

On October 20, 2008, Petitioner filed a pro se motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Ex. V).   The state circuit court denied the motion on January 12, 2009 (Ex. W).

Petitioner filed the instant federal habeas action on January 9, 2009 (Doc. 1).   Respondent concedes that the petition is timely, without waiving the timeliness issue (Doc. 16 at 3).

II.     STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.   In relevant part, § 2254(d) provides:

>    (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as determined
> by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254 (2006).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state
> court arrives at a conclusion opposite to that reached by this court on a question of
> law or if the state court decides a case differently than this Court has on a set of
> materially indistinguishable facts.  Under the "unreasonable application" clause, a
> federal habeas court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

Id., 529 U.S. at 412–13 (O'Connor, J., concurring).  The federal habeas court "determining whether [it] should overturn the state courts' rejection of the claim at issue" should "review the highest state court decision disposing of the claim."  Harvey v. Warden, Union Corr. Inst., 629 F.3d 1228, 1237 (11th Cir. 2011); see Knowles v. Mirzayance, — U.S.—, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251 (2009).

Employing the Williams framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

decision embodies the legal principle at issue.  Dicta in opinions is not controlling.  Thaler v. Haynes, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); Bowles v. Sec'y for Dep't of Corr., 608 F.3d 1313, 1315 (11th Cir. 2010).  A federal court of appeals decision cannot clearly establish federal law for § 2254 purposes, even if its holding is directly on point.  Bowles, 608 F.3d at 1316 (citing Renico v. Lett, — U.S. —, 130 S. Ct. 1855, 1866, 176 L. Ed. 2d 678 (2010)).

After identifying the governing legal principle, the court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  To be entitled to deference, the state court decision need not cite to Supreme Court case law.  As the Supreme Court clarified:  "Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  See Panetti v. Quarterman, 551 U.S. 930, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court must then determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court.  Williams, 529 U.S. at 409; see Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  A state court may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause.

Knowles, 129 S. Ct. at 1419.  Notably, even a state court's incorrect or erroneous application of clearly established law will not warrant federal habeas relief unless it is also objectively unreasonable.  *See* Schriro v. Landrigan, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.   *See* Gill v. Mecusker,  633 F.3d 1272, 1287 (11th Cir. 2011) (citing Harrington, 131 S. Ct. at 786).  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the Supreme Court applies an objective test.  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court

proceeding.").  The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See* Gill, 633 F.3d at 1292.

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see, e.g.,* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(2) interact in the context of fact-based challenges to state court adjudications.  Cave v. Sec'y for Dep't of Corr., — F.3d. —, 2011 WL 1365021 (11th Cir. Apr. 12, 2011).  However, in a recent Eleventh Circuit decision the court declined to grant habeas relief under § 2254(d)(2), in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  Gill, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* Panetti, 551 U.S. at 953.  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this standard is difficult to meet, that is because it was meant to be."  Harrington, 131 S. Ct. at 786.

III.     EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving

---

[4]Section 2254 provides, in pertinent part:

(b)(1)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the

the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which

judgment of a State court shall not be granted unless it appears that–
    (A)  the applicant has exhausted the remedies available in the courts of the State; or
    (B) (i)  there is an absence of available State corrective process; or
        (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

"the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id., 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

---

[5] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement. After Duncan, however, the Eleventh Circuit has taken a more narrow approach. For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. Id. at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." Id.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally

_____

[6] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

barred from federal review.  *See* O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424-25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[7]  Second, the state

---

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.  *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause and prejudice or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)).  Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

     A.    Ground One:  "Deprivation of the Fifth, Sixth, and Fourteenth Amendment rights as secured by the United States Constitution, through Petitioner's dual-conviction [sic] of resisting an officer with violence and resisting without violence violated prohibition against double jeopardy."

Petitioner contends his convictions for resisting an officer with violence and resisting an officer without violence violated the Fifth Amendment prohibition against double jeopardy because

they arose from a single criminal episode (Doc. 1 at 4–6).[8]  He states the jury was instructed that the elements of resisting an officer with violence, Count 2, were (1) the defendant knowingly and willfully resisted, obstructed, and/or opposed Deputy Crystal Jeffcoat or Deputy Mike Harlow, by offering to do her or him violence, (2) at the time, Deputy Crystal Jeffcoat or Deputy Mike Harlow was engaged in the lawful execution of a legal duty, and (3) at the time, Deputy Crystal Jeffcoat or Deputy Mike Harlow was an officer (*id.* at 6).  He states the jury was also instructed that resisting without violence was a lesser included offense of Count 2, and the elements were the same as resisting with violence, except the violence is eliminated (*id.*).  As to Count 4, the jury was instructed as to the same elements of resisting without violence, except that Count 4 applied to Deputy Christina Sudduth and Deputy Halford Harris (*id.*).  Petitioner contends Florida law provides that resisting an officer in a single incident supports only one conviction, no matter how many officers are involved; therefore, his convictions for Counts 2 and 4 violate double jeopardy (*id.* at 6). Petitioner states he presented this claim to the state courts as Issue I in his brief on direct appeal (*id.* at 7).

Respondent contends Petitioner may not challenge his conviction for resisting an officer without violence (Count 4) because he is not "in custody" for that conviction, as required by § 2254 (Doc. 16 at 3–4).  Respondent states Petitioner was sentenced to time served on Count 4; therefore, he has not been "in custody" of his conviction on Count 4 since the date he was sentenced, May 13, 2004 (*id.* at 4 (citing <u>Lackawanna Cnty. Dist. Attorney v. Coss</u>, 532 U.S. 394, 121 S. Ct. 1567, 149 L. Ed. 2d 608 (2001))).

Respondent further contends even if Petitioner succeeded on this claim, he is not entitled to meaningful relief (*id.* at 5).  The relief which Petitioner would receive is vacatur of his conviction and sentence on Count 4, but he has already served that sentence.  His conviction and sentence on Count 2 would remain intact (*id.*).  Further, when Petitioner was sentenced to time served on Counts 3 and 4, he was given the same pre-sentence custody credit on his sentences on Counts 1 and 2 (*id.*).  Therefore, his sentence on Count 4 did nothing to lengthen his incarceration for Count 2 (*id.*).

---

[8] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

Respondent acknowledges Petitioner's sentence calculation on Counts 1 and 2 was affected by his conviction on Count 4, because it added two-tenths of a point on his sentencing scoresheet, resulting in total sentence points of 84.2, instead of 84, and a minimum sentence calculation of 42.1 months, instead of 42 months (*id.* at 6). However, since Petitioner was sentenced to 109 months, which was far above the minimum sentence, the extra one-tenth point was of no real consequence (*id.*).

Respondent additionally contends Petitioner failed to exhaust this issue because he did not fairly present it as a federal issue on direct appeal (Doc. 16 at 6–8). Moreover, Petitioner is not entitled to relief on the merits of his claim, because the evidence showed Petitioner engaged in separate acts of resistence, violently resisted one officer by knocking into her and nonviolently resisted two other officers by running from them (*id.* at 8).

In Petitioner's reply brief, he contends he is in custody pursuant to a single state court judgment; therefore, he may challenge any of the convictions imposed by the judgment, even though some of the sentences have expired (Doc. 23 at 1–2).

The first showing a § 2254 petitioner must make is that he is "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a). In Maleng v. Cook, 490 U.S. 488, 109 S. Ct. 1923, 104 L. Ed. 2d 540 (1989), the Supreme Court considered a situation in which the petitioner filed a § 2254 petition listing as the "'conviction under attack'" a 1958 state conviction for which he had already served the entirety of his sentence. 490 U.S. at 489–90. The petitioner also alleged that the 1958 conviction had been "used illegally to enhance his 1978 state sentences" which he had not yet begun to serve because he was at that time in federal custody on an unrelated matter. *Id.* The Supreme Court determined that the petitioner was "in custody" on his 1978 sentences because the State had lodged a detainer against him with the federal authorities. *Id.* at 493. The Court held that the petitioner was not "in custody" on his 1958 conviction merely because that conviction had been used to enhance a subsequent sentence. *Id.* at 492. The Court acknowledged, however, that because the § 2254 petition "[could] be read as asserting a challenge to the 1978 sentences, as enhanced by the allegedly invalid prior conviction, . . . [the petitioner] . . . satisfied the 'in custody' requirement for federal habeas jurisdiction." *Id.*, at 493–94.

In Coss, the Supreme Court addressed the question explicitly left unanswered in Maleng: the extent to which the prior expired conviction itself may be subject to challenge in the attack upon

the current sentence which it was used to enhance.  Coss, 532 U.S. at 403.  In answering that question, the Court extended its holding in Daniels v. United States, 532 U.S. 374, 121 S.Ct. 1578l, 149 L. Ed. 2d 590 (2001) to a § 2254 petition directed at enhanced state sentences.  Coss, 532 at 402. In Daniels, the Court held that "[i]f . . . a prior conviction used to enhance a federal sentence is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), then that defendant . . . may not collaterally attack his prior conviction through a motion under § 2255."  532 U.S. at 382.

In extending Daniels to the § 2254 context, the Court noted that Daniels was grounded on considerations relating to the need for finality of convictions and ease of administration.  Coss, 532 U.S. at 402.  As applied to the § 2254 context, the Court noted that once a judgment of conviction is entered in state court, it is subject to review in multiple forums, including state direct review, state post-conviction review, and federal habeas.  Id. at 402–03.  Once those vehicles for review are no longer available, the conviction becomes final, and the State obtains a strong interest in preserving the integrity of the judgment of conviction and sentence.  Id. at 403.  As to the additional consideration, the ease of administration, the Court noted a federal court sitting in habeas jurisdiction was unlikely to have access to the documents necessary to evaluate claims arising from prior proceedings, for example, state court records and transcripts, to ensure that challenged convictions were obtained in a manner consistent with constitutional demands.  Id. (citation omitted).

In light of these considerations, the Court held:

once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid.  See Daniels, post, at 382, 121 S.Ct. 1578.  If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

Coss, 532 U.S. at 403–04.

In the instant case, there is no dispute that Petitioner is currently in custody pursuant to the state court judgment his is challenging in this habeas action.  The issue is whether Petitioner may

challenge his convictions on the counts for which his sentences expired by virtue of his being sentenced to time served.  The court notes that the considerations upon which the Supreme Court grounded its holding in <u>Coss</u> to preclude a petitioner's challenge to an expired sentence used to enhance a current sentence are not present here.[9]  When Petitioner filed his § 2254 petition, federal habeas was still available to review the judgment of conviction; therefore, the State's interest in finality and preserving the integrity of the judgment of conviction and sentence was not as strong as in <u>Coss</u>.  Additionally, this federal court has before it the state court record and transcripts necessary to evaluate claims arising from all of the convictions and sentences encompassed by the judgment; therefore, there is no administrative obstacle to this court's review of any of the convictions or sentences imposed pursuant to the judgment.  Therefore, the policy considerations underlying <u>Coss</u> are not present in this case.

Assuming, without deciding, that <u>Coss</u> does not preclude review of Petitioner's double jeopardy claim, the next issue to be addressed is whether Petitioner fairly presented his federal claim to the state courts.  In Petitioner's initial brief on appeal, he acknowledged that the double jeopardy claim was not preserved in the trial court but argued the claim was fundamental error and, therefore, could be reviewed in the absence of preservation below (Ex. D at 14).  Petitioner argued his dual convictions of resisting an officer with violence and resisting without violence violated double jeopardy because they arose from a single continuous criminal episode (*id.* at 14–16).  He argued that under Florida law, there was only one crime of resisting, no matter the number of officers involved (*id.*).  He further argued that resisting without violence is a permissive lesser-included offense of resisting with violence; and the offenses have the same elements, except for the violence element (*id.*).  Petitioner did not clarify whether he was claiming a violation of the double jeopardy prohibition included in Article 1 § 9 of the Florida Constitution or the Fifth Amendment to the United States Constitution (*id.*).

---

[9] Regarding the enhancement issue, the court notes the record contains two sentencing scoresheets in this case (Ex. L at 39–41, 44–46).  The scoresheet referenced by Respondent (in which Petitioner's minimum sentence was calculated as 42.1 months) was not the scoresheet actually used by the sentencing court.  On the scoresheet actually used by the court, the total sentence points were 168.2 (which included the additional two-tenths of a point for Count 4), and the minimum sentence was calculated as 105.15 months (instead of 105 months without the points for Count 4) (Ex. L at 44–46).  While Petitioner's actual sentence of 109 months was still above the minimum, it was less only 4 months above the minimum, not 67 months as Respondent contends.

In its answer brief, the State interpreted Petitioner's claim as arguing that Fla. Stat. § 775.021(4), which codified the Supreme Court's standard for determining whether two convictions violate the Double Jeopardy Clause of the Fifth Amendment, *see* Blockburger v. United States, 284 U.S. 299 (1932), was unconstitutionally applied to the facts of his case (Ex. D at 6, 8–11). Respondent argued that such fact-specific claims were not subject to fundamental error analysis; rather, they must be preserved below, which Petitioner admittedly failed to do (*id.* at 8- 10). As to the merits of the double jeopardy claim, Respondent argued that Petitioner's acts of resistance were separate criminal offenses because they involved different officers and different acts of resistance which were separated from each other in time and space (*id.* at 10–13). Therefore, his convictions were authorized by Fla. Stat. § 775.021(4) (*id.* at 8).

In Petitioner's reply brief, he repeated his argument that Florida law was clear that multiple convictions of charges of resisting an officer arising out of a single episode violate the prohibition against double jeopardy regardless of the number of officers involved (*id.* at 2–4).

While it is a close call, the undersigned concludes that Petitioner fairly presented the substance of his federal double jeopardy claim to the state court on direct appeal of his conviction. Therefore, the claim was exhausted for purposes of § 2254.

　　　　　1.　　　Clearly Established Federal Law

The Double Jeopardy Clause protects an individual from being "twice put in jeopardy." Missouri v. Hunter, 459 U.S. 359, 365, 103 S.Ct. 673, 678, 74 L. Ed. 2d 535 (1983). With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended. *Id.*, 459 U.S. at 366.[10] "[W]here two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishment in the absence of a clear indication of contrary legislative intent." Whalen v. United States, 445 U.S. 684, 691–92, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980). Thus, the first step in the double jeopardy analysis is to determine whether the

---

[10] The Supreme Court has rejected the argument that the prohibition against multiple punishments does not invalidate either conviction because the sentences were ordered to run concurrently. *See* Rutledge v. United States, 517 U.S. 292, 301–02, 116 S. Ct. 1241, 134 L. Ed. 2d 419 (1996).

legislature specifically authorized cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct.  *See* Hunter, 459 U.S. at 368–69.

Where the legislative intent to impose multiple punishments is not clear from the face of the statutes or the legislative history, rules of statutory construction apply to help determine legislative intent.  *See* Whalen, 445 U.S. at 691–92; Albernaz v. United States, 450 U.S. 333, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981).  The rule of construction governing federal statutes in the context of the double jeopardy analysis was set forth in Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, L. Ed. 306 (1932).  The Blockburger rule provides, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  Blockburger, 284 U.S. at 304.

In Blockburger, the petitioner was charged with violating 26 U.S.C. §§ 692, 696 ("Harrison Narcotic Act").[11]  284 U.S. at 300–01.  The indictment contained five counts; but the jury returned a verdict against the petitioner upon only the second, third, and fifth counts.  *Id.* at 301.  Each of these counts charged a sale of morphine hydrochloride to the same purchaser.  *Id.*  The second count charged a sale on a specified day of ten grains of the drug not in or from the original stamped package; the third count charged a sale on the following day of eight grains of the drug not in or from the original stamped package; the fifth count charged the latter sale also as having been made not in pursuance of a written order of the purchaser as required by the statute.  *Id.*  The petitioner made two double jeopardy claims:  (1) the two sales charged in the second and third counts (as

---

[11] The two sections provided:

[§ 626] It shall be unlawful for any person to purchase, sell, dispense, or distribute any of the aforesaid drugs [opium and other narcotics] except in the original stamped package or from the original stamped package; . . . .

[§696] It shall be unlawful for any person to sell, barter, exchange, or give away any of the drugs specified in section 691 of this title, except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue.

26 U.S.C. §§ 626, 696.

violations of § 626) constituted a single offense because they were made to the same person; and (2) the sale charged in the third count as having been made not from the original stamped package (a violation of § 626), and the same sale charged in the fifth count as having been made not in pursuance of a written order of the purchaser (a violation of § 696), constituted one offense.  *Id.*

The Supreme Court rejected the petitioner's first argument, that his two convictions for violating § 626 constituted a single offense, on the ground that the criminal statute at issue intended to punish distinct acts, not conduct continuous in character.  Blockburger, 284 U.S. at 302.  In making this determination, the Court analyzed the language of the Harrison Narcotic Act to determine whether the legislature intended to prohibit the individual acts or the course of action which they constitute.  *Id.*  The Court determined that the Act did not create a continuous offense (for example, the offense of engaging in the business of selling the forbidden drugs) but penalized separate offenses, that is, any sale made in the absence of either of the qualifying requirements set forth in the Act.  *Id.*  Therefore, each of the petitioner's several successive sales constituted a distinct offense, however closely they followed each other, for which the petitioner could be separately punished.  *Id.*

The Supreme Court rejected the petitioner's second argument, that his convictions for violating §§ 626 and 696 constituted  a single offense because both sections were violated by the same act, on the ground that each statutory section required proof of an additional fact which the other did not.  *Id.* at 304.  A violation of § 626 required proof that the sale of the drug was not in or from the original stamped package, a fact not required to be proved for a violation of § 696; and § 696 required proof that the sale was not in pursuance of a written order of the purchaser, a fact not required to be proved for a violation of § 626.  Therefore, although the petitioner's conduct occurred during one sale, he committed two offenses.  *Id.*

Where a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under Blockburger, a court's task of statutory construction is at an end, and the prosecutor may seek, and the trial court or jury may impose, cumulative punishments under such statutes in a single trial.  Hunter, 459 U.S. at 368–69.

> 2.      Federal Review of State Court Decision

As previously noted, the First DCA denied Petitioner's claim without written opinion. Although the state court's denial of Petitioner's claim without opinion provides no guidance to this court in determining the rationale for its decision, this court must still defer to the state court decision unless review of the record shows that decision to be unreasonable. *See* Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1254 (11th Cir. 2002) (summary nature of state court's decision does not lessen deference it is due under AEDPA); Helton v. Secretary for Dept. of Corrections, 233 F.3d 1322, 1326–27 (11th Cir. 2000).

The state court record shows that, as it relates to Counts 2 and 4, the amended information charged Petitioner with the following:

> COUNT 2: . . . **WALTER LEON JONES, on or about November 8, 2003,** . . . did knowingly and willfully resist, obstruct, or oppose **Deputy Krystal Jeffcoat or Deputy Mike Harlow, or both, law enforcement officers** employed by the **Escambia County Sheriff's office**, in the lawful execution of a legal duty, to-wit: **investigating a complaint or arresting the said WALTER LEON JONES**, by offering or doing violence to the person of said **Deputy Krystal Jeffcoat or Deputy Mike Harlow, or both,** by **running into Deputy Krystal Jeffcoat and/or by struggling with Deputy Krystal Jeffcoat and/or Deputy Mike Harlow**, in violation of Section 843.01, Florida Statutes.
> . . . .
> COUNT 4: . . . **WALTER LEON JONES, on or about November 8, 2003,** . . . did unlawfully resist, obstruct, or oppose **Deputy Christina Sudduth or Deputy Halford Harris, or both, law enforcement officers** employed by the **Escambia County Sheriff's office**, in the lawful execution of a legal duty, to-wit: **investigating a complaint or arresting the said WALTER LEON JONES**, but without offering or doing violence to the person of the said **Deputy Christina Sudduth or Deputy Halford Harris, or both,** by **running from said law enforcement officers**, in violation of Section 843.02, Florida Statutes.

(Ex. L at 3).

At trial, Deputy Halford Harris testified he was dispatched to an Eckerd's drug store to locate a person named Walter Lee Jones (Ex. C at 29–30). Deputy Harris arrived at the store with Deputy Sudduth (*id.* at 30, 54). A store clerk directed the officers to the pharmacy at the rear of the store (*id.* at 31). Petitioner was in the pharmacy (*id.* at 32–33). The deputies asked Petitioner several times to identify himself (*id.* at 34–35, 55). Petitioner stated his name was Adrian Hunter (*id.* at 35, 55). Deputy Harris noticed that as Petitioner answered, he was looking down and his eyes were rapidly moving left to right, which indicated Petitioner was getting ready to run (*id.* at 35–36).

Deputy Harris asked Petitioner to produce identification (*id.* at 34–35).  Petitioner put his hand in his pocket, and Harris instructed him to take it out, because Harris inferred, from the manner in which Petitioner moved his hand toward his pocket, that Petitioner was not reaching for a wallet or identification (*id.* at 36–37).  Petitioner took off running, and Deputies Harris and Sudduth ran after him (*id.* at 37, 55). The deputies ordered Petitioner to stop, but he kept running (*id.* at 37, 56). Deputy Harris shot two Taser darts or probes into Petitioner's lower right back (*id.* at 38, 40, 56). Deputy Sudduth testified that Petitioner flinched (*id.* at 57), and Deputy Harris stated that Petitioner's knees buckled somewhat (*id.* at 40), but Petitioner pulled out the probes and kept running (*id.* at 40–41).  Deputy Jeffcoat was standing at the front door of the store (*id.* at 41). According to Deputy Harris, Petitioner leaned forward and charged Deputy Jeffcoat (*id.* at 41). Deputy Sudduth stated Petitioner "went down in a crouched position and he speared her" in the abdomen (*id.* at 57).  Petitioner then ran out the door (*id.* at 41, 49, 57).  Harris testified that the pharmacy was approximately 100 feet from the front door of the store, and Deputy Jeffcoat was visible for approximately 30 feet from where Petitioner was running (*id.* at 31–32, 50–51).  Deputy Harris testified that he, Deputy Sudduth, and Deputy Jeffcoat were in uniform (*id.* at 31, 41).

Deputy Jeffcoat testified she was standing just outside the sliding front door of Eckerd's when she heard the sound of a Taser going off inside the store (Ex. C at 65–66).  She stated she "took off running" inside the store (*id.* at 66).  When she was approximately six feet inside the store, she heard the Taser stop and then heard items fall off store shelves, as if someone was running toward the front of the store (*id.*).  She began to walk forward to look around a corner of shelves, and she saw Petitioner running (*id.* at 67–68).  She and Petitioner made eye contact, and Petitioner went from a more erect position to "hunched over as if [ ] he was a running back on a football team." (*id.*).  Deputy Jeffcoat stated she completely stopped to prevent him from leaving the store, and Petitioner came around the corner hunched over with his head down and ran straight into her chest with his head (*id.* at 67–70).  As Petitioner ran into her, he grabbed a nearby bread rack, and it fell on her (*id.* at 68–69).  Petitioner ran into the Eckerd's parking lot, jumped over a fence into a trailer park, and then jumped over another fence behind an apartment complex (*id.* at 72).  A canine unit was called, and Petitioner was tracked to his sister's house in a nearby area (*id.* at 73–74).  Deputy Jeffcoat, Deputy Harlow, and Deputy Reduindin entered the house, and Jeffcoat saw white tennis

shoes crawling across the floor underneath a bed in one of the bedrooms (*id.* at 75). All three deputies entered the bedroom and commanded Petitioner to come out (*id.* at 75–76). Deputy Reduindin lifted the mattress, and the officers attempted to pull him out, but Petitioner struggled (*id.* at 76). As Deputy Jeffcoat was attempting to handcuff him, Petitioner was lying on his stomach swatting his hands (*id.*). Deputy Jeffcoat testified Petitioner was struggling with her and Deputy Harlow, and Harlow eventually employed his Taser on Petitioner's lower back (*id.*). Jeffcoat was then able to handcuff Petitioner's right hand, but Petitioner refused to remove his left hand form beneath him, so Harlow employed his Taser again, and Petitioner complied (*id.*).

The jury was instructed as follows, in relevant part:

Under Count 2, resisting an officer with violence, the State must prove the following three elements beyond a reasonable doubt: First, . . . that the defendant knowingly and willfully resisted, obstructed, opposed officer Jeffcoat or officer Harlow by offering to do to him or to her violence; secondly, at the time, officer Jeffcoat or officer Harlow was engaged in the lawful execution of a legal duty; and thirdly, at the time officer Jeffcoat or officer Harlow was an officer.

. . . .

Now, with regard to this count, there is a lesser included offense that you can consider and that is resisting officer without violence, and the elements to prove that are three: that is, first, the defendant resisted, obstructed, opposed either officer Harlow or officer Jeffcoat; secondly, at the time, officer Harlow or officer Jeffcoat was in the—or engaged in the lawful execution of a legal duty; and thirdly, at the time, officer Harlow or officer Jeffcoat was an officer. So the elements of two—resisting without violence is simply the same as resisting with violence except the violence—element of violence is eliminated.

. . . .

With regard to Count 4, again, the elements are three with regard to resisting officer without violence: that is the State must prove these following three elements beyond a reasonable doubt: First, the defendant resisted, obstructed, opposed, and the officers to which this would apply would be officer Christina Sudduth and Deputy Halford Harris; secondly, at the time these officers were engaged in the lawful execution of a legal duty; and thirdly, at the time Christina Sudduth or Halford Harris were officers.

(Ex. C at 151–52). The jury convicted Petitioner as charged on Counts 2 and 4 (*id.* at 162).

Initially, Petitioner has failed to satisfy the "contrary to" provision of § 2254(d)(1), because he has failed to demonstrate that the First DCA confronted a set of facts materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from Supreme

Court precedent.  *See* Lockyer, 538 U.S. at 73.  Therefore, he is entitled to federal habeas relief only if he shows that the First DCA unreasonably applied Supreme Court precedent in denying his double jeopardy claim.  As previously discussed, when faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.   *See* Gill,  633 F.3d at 1287 (citing Harrington, 131 S. Ct. at 786).  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

In the instant case, the relevant Florida statutes specifying the separate offenses of resisting an officer with violence and resisting an officer without violence are sections 843.01 and 843.02, respectively.  Section 843.01 provides, in relevant part:

> Whoever knowingly and willfully resists, obstructs, or opposes any officer as defined in s. 943.10(1), (2), (3), (6), (7), (8), or (9); . . .  in the execution of legal process or in the lawful execution of any legal duty, by offering or doing violence to the person of such officer or legally authorized person, is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. § 843.01 (2003).  Section 843.02 provides, in relevant part:

> Whoever shall resist, obstruct, or oppose any officer as defined in s. 943.10(1), (2), (3), (6), (7), (8), or (9); . . .  in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

Fla. Stat. § 843.02 (2003).  Neither of those provisions indicate whether the Florida legislature authorized cumulative sentences where both statutes are offended in a single criminal episode.  Therefore, rules of statutory construction must be applied to help determine legislative intent.

The Florida legislature set forth rules of construction in Florida Statutes section 775.021. That provision provides, in relevant part:

> (1) The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.
>
> (2) The provisions of this chapter are applicable to offenses defined by other statutes, unless the code otherwise provides.
> . . . .
> (4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
>
> (b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:
>
> 1. Offenses which require identical elements of proof.
>
> 2. Offenses which are degrees of the same offense as provided by statute.
>
> 3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

Fla. Stat. § 775.021 (2003).

The First DCA's rejection of Petitioner double jeopardy claim could have been supported by the theory that Petitioner's act of resisting Deputies Sudduth and Harris and then Deputies Jeffcoat and Harlow were not part of a single continuous criminal episode under Florida law.   In determining whether offenses arise in the course of one criminal episode, for purposes of § 775.021(4), Florida courts consider (1) whether separate victims were involved; (2) whether the crimes occurred in separate locations; and (3) whether there was a temporal break between the incidents such that the defendant had an opportunity to pause, reflect, and form a new criminal intent.  *See* Vasquez v. State, 778 So. 2d 1068, 1070 (Fla. 5th DCA 2001); Beahr v. State, 992 So.

2d 844, 846 (Fla. 1st DCA 2008) ("The test for determining whether two crimes occurred in the same criminal episode is whether there was a temporal break between the crimes, such that the defendant had an opportunity to pause, reflect, and form a new criminal intent. . . . If there was such a break, then the crimes occurred in separate criminal episodes and may be punished separately."). When considering the issue of what constitutes a single criminal episode in the context of resisting charges, Florida courts have held that a defendant's continuous resistance to a single ongoing attempt to effectuate his arrest constitutes a single episode of resisting.  *See* Williams v. State, 959 So. 2d 790, 793 (Fla. 2d DCA 2007) (citations omitted).

Here, there were different victims involved in each offense.  Officers Sudduth and Harris were involved in one offense, and officers Jeffcoat and Harlow were involved in the other.  Further, there was evidence of a temporal and spatial break in the acts of resistance.  After Petitioner fled from Deputies Sudduth and Harris at the rear of the store and was shot with the Taser, Petitioner had an opportunity, albeit small, upon making eye contact with Deputy Jeffcoat approximately 30 feet from him, to pause, reflect, and decide not to crouch like a linebacker and charge her in the chest. Further, after Petitioner ran from the store, jumped two fences, and ran into his sister's house, he certainly had an opportunity, while hiding under the bed, to pause, reflect, and decide not to struggle with Deputies Jeffcoat and Harlow.  The First DCA thus could have denied Petitioner's double jeopardy claim on the theory that the offenses occured in separate criminal episodes.  *See* Patrizi v. State, 31 So. 3d 229, 230 (Fla. 1st DCA 2010) (defendant had opportunity, after her flight in parking lot was thwarted by Officer Henagan, to pause, reflect, and decide not to physically resist Officer Jones with violence in breath test office; accordingly, crimes occurred in separate criminal episodes); Bright v. State, 760 So. 2d 287, 288 (Fla. 5th DCA 2000) (conviction for resisting officer with violence and resisting arrest without violence did not violate double jeopardy, where counts addressed two separate acts of resisting); *see also* Ruiz-Alegria v. State, 14 So. 3d 1276, 1277 (Fla. 2d DCA 2009) (state could charge defendant's fleeing from officer who stopped his vehicle as separate episode from defendant's running from three other officers, refusing their commands to come out of trees, and physically resisting their efforts to arrest him); Bell v. State, 941 So. 2d 1286, 1287–88 (Fla. 4th DCA 2006) (noting State's argument that counts for resisting arrest with violence and resisting arrest without violence were for conduct separate and distinct from one another, but

remanding to post-conviction court for evidentiary hearing or to attach portions of the record refuting claim). *Cf.* Williams, 959 So. 2d at 793 (resisting an officer with violence and resisting an officer without violence arose from single criminal episode, and thus convictions for both offenses violated defendant's constitutional protection against double jeopardy; defendant fled from two officers who immediately gave chase and were joined by third officer, third officer caught defendant and tackled him, defendant struggled but was ultimately handcuffed, "entire chase appeared to have lasted several blocks at most[,] [a]t least two of the victims . . . were the same," and there was no temporal break between defendant's act of nonviolent resistance by running and his act of violent resistance when caught) (emphasis added). *But see* Swilley v. State, 845 So. 2d 930, 932–33 (Fla. 5th DCA 2003) (conviction for resisting arrest without violence reversed on double jeopardy grounds because conviction for resisting with violence occurred during same criminal episode; charge of resisting without violence was based upon defendant's failure to comply with officer's instructions to get on the ground; and charge of resisting with violence was based upon defendant's placing his car in reverse, driving it towards one officer, and then driving it into another officer's vehicle in an attempt to avoid arrest); Goodman v. State, 801 So.2d 1012 (Fla. 4th DCA 2001) (defendant, who initially ran from officers who were attempting to detain him and then, when caught after a chase, elbowed officers who were trying to handcuff him, could not be convicted of both resisting with violence and resisting without violence because all the acts of resisting were part of one continuous episode); Fogle v. State, 754 So.2d 878 (Fla. 1st DCA 2000) (defendant who, after being told he was under arrest, struck an officer, fled, and then struck additional officers after he was caught could not be convicted of both resisting with violence and resisting without violence since his actions arose out of a single continuous effort to avoid arrest).

It is possible that fairminded jurists could disagree that the First DCA's denial of Petitioner's double jeopardy claim was incorrect, but this only demonstrates that the decision was not unreasonable. *See* Harrington, 131 S. Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."); *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's

rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts). Therefore, Petitioner is not entitled to federal habeas relief on his double jeopardy claim.

      B.    <u>Ground Two:  "Deprivation of the Fifth, Sixth, and Fourteenth Amendment rights as secured by the United States Constitution, where the trial evidence put forth by the State was insufficient to substain [sic] convictions for either resisting an officer with violence or without violence, because no evidence was presented or could prove that the deputies told Petitioner he was under arrest, or to stop; and the jury instructions were constitutionally flawed for failing to instruct the jury that the State must prove the deputies ordered Petitioner to stop and that he failed to stop."</u>

      Petitioner contends the trial court erred in denying his motion for judgment of acquittal on both counts of resisting an officer because there was no evidence that (1) deputies told him to stop or communicated that he was under arrest, (2) he knew or should have known that the deputies were attempting to stop him, or (3) he intentionally ran into Deputy Jeffcoat (Doc. 1 at 7–9).  Petitioner also contends he had a valid defense of self-defense because the deputies used lawful force upon him by shooting him with the Taser (*id.* at 9).   In a related claim, Petitioner contends the jury instructions were erroneous because they failed to instruct the jury that they must find (1) the deputies ordered Petitioner to stop or otherwise communicated that he had a duty to stop, and (2) that Petitioner understood that the deputies had commanded him to stop (*id.* at 9–10).  Petitioner states he raised these claims as Issue II on direct appeal (*id.* at 10).

      Respondent concedes Petitioner argued on direct appeal that the evidence was insufficient to sustain his convictions on the resisting charges, and the jury instructions on those charges were erroneous (Doc. 16 at 8).  However, Respondent contends Petitioner did not fairly present either claim as federal in nature; therefore, to the extent he now raises federal claims, the claims were not exhausted (*id.* at 8–9, 12–13).  Respondent contends even if the claims were presented below as federal claims, Petitioner has failed to demonstrate that the First DCA's denial was contrary to or an unreasonable application of federal law (*id.* at 9–12, 14).

      1.    <u>Sufficiency of Evidence</u>

The court assumes, without deciding, that Petitioner exhausted his sufficiency of the evidence claim as to the resisting an officer with violence and resisting an officer without violence counts (Counts 2 and 4).[12]

a.   Clearly Established Federal Law

As an issue of federal law, Petitioner's claim derives from the Fourteenth Amendment due process requirement that the evidence presented at trial be sufficient to convict.  In determining whether Petitioner's conviction was obtained with constitutionally infirm evidence, reference must be made to the substantive elements of the offense as defined by state law.  Jackson v. Virginia, 443 U.S. 307, 324 & n.16, 99 S. Ct. 2781, 2792 n.16, 61 L. Ed. 2d 560 (1979).  To satisfy the constitutional requirement of due process during trial, the State must prove beyond a reasonable doubt every fact that constitutes an essential element of the crime charged against the defendant. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073, 25 L. Ed. 2d 368 (1970).  When reviewing a claim of insufficient evidence, the proper inquiry is not whether the reviewing court itself believes that the evidence established guilt beyond a reasonable doubt, but "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson, 443 U.S. at 319 (citation omitted).  The court should not reweigh the evidence but should view it in the light most favorable to the jury's verdict.  Id.  Because jurors are free to evaluate the credibility of testimony and the weight of the evidence, the court should assume that all conflicting inferences were resolved against the defendant.  Id. at 326.  The test under Jackson is a limited one, and it does not require that the evidence rule out every hypothesis except that of guilt beyond a reasonable doubt.  Id.; Wilcox v. Ford, 813 F.2d 1140, 1143 (11th Cir. 1987).  "The simple fact that the evidence gives some support

---

[12] In his direct appeal, Petitioner seems to have raised only a state law sufficiency of the evidence claim with respect to his convictions on Counts 2 and 4 (see Ex. D).  Whether this adequately exhausted state court remedies as to the federal claim is uncertain.  Compare Pearson v. Sec'y, Dep't of Corr., 273 Fed. Appx. 847, 850 (11th Cir. 2008) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner cited exclusively to Florida cases in state court and addressed Florida law in all of his substantive arguments, even though Florida courts assess sufficiency of evidence under standard identical to federal standard), with Mulinix v. Sec'y for Dep't of Corr, 254 Fed. Appx. 763 (11th Cir. 2007) (petitioner's federal sufficiency of evidence claim was exhausted where petitioner presented identical argument to state and federal courts, and Florida courts' sufficiency of evidence standard was identical to federal standard).

to the defendant's theory of innocence does not warrant the grant of habeas relief." Wilcox, 813 F.2d at 1143.

b.      Federal Review of State Court Decision

The First DCA denied Petitioner's claim without written opinion. As noted *supra*, although the state court's denial of Petitioner's claim without opinion provides no guidance to this court in determining the rationale for its decision, this court must still defer to the state court decision unless review of the record shows that decision to be unreasonable. *See* Wright, 278 F.3d at 1254; Helton, 233 F.3d at 1326–27.

As previously discussed, for Petitioner to be convicted of resisting an officer with violence as charged in Count 2, the State was required to prove the following three elements beyond a reasonable doubt: (1) Petitioner knowingly and willfully resisted, obstructed, or opposed officer Jeffcoat or officer Harlow by offering to do to him or to her violence; (2) at the time, officer Jeffcoat or officer Harlow was engaged in the lawful execution of a legal duty; and (3) at the time officer Jeffcoat or officer Harlow was an officer. *See* Fla. Stat. § 843.01; Fla. Standard Jury Instructions in Crim. Cases § 21.1 (2008). For Petitioner to be convicted of resisting an officer without violence as charged in Count 4, the State was required to prove the following three elements beyond a reasonable doubt: (1) Petitioner resisted, obstructed, or opposed officer Christina Sudduth or Deputy Halford Harris; (2) at the time, officer Sudduth or officer Harris was engaged in the lawful execution of a legal duty; and (3) at the time, Sudduth or Harris was an officer. *See* Fla. Stat. § 843.02; Fla. Standard Jury Instructions in Crim. Cases § 21.2 (2008).

Viewing the testimony of Deputies Harris, Sudduth, and Jeffcoat, described *supra*, in the light most favorable to the prosecution, the undersigned concludes that the jury could have found the presence of each essential element beyond a reasonable doubt.[13] Therefore, Petitioner has failed

_____

[13] In 2007, after Petitioner's trial and direct appeal, the Florida Supreme Court recognized a fourth element as an essential element of each crime of resisting—at the time the defendant resisted, he or she knew that the officer was an officer. Polite v. State, 973 So. 2d 1107 (Fla. 2007). One year later, the Florida Supreme Court amended the standard jury instructions accordingly. In re Standard Jury Instruction in Criminal Cases—Report No. 2008-03, 996 So. 2d 851 (Fla. 2008). Even if this additional element had been recognized at the time of Petitioner's trial and direct appeal, there was sufficient evidence adduced at trial to satisfy this element, namely, Deputy Harris's testimony that he, Deputy Sudduth, and Deputy Jeffcoat were in uniform.

to demonstrate that the First DCA's denial of his claim was contrary to or an unreasonable application of clearly established federal law.

        2.    Jury Instructions

As previously discussed, Petitioner contends the jury instructions on the resisting counts violated his Fifth, Sixth, and Fourteenth Amendment rights because they failed to instruct the jury that the State was required to prove that the officers ordered Petitioner to stop or otherwise communicated to Petitioner that he had a legal obligation to stop.  In his direct appeal, Petitioner claimed that the trial court committed fundamental error by failing to instruct the jury on these alleged elements of resisting (Ex. D at 17–19, 35–40).  However, Petitioner did not state a federal law basis for his claim in his state court brief.  For example, he did not cite in conjunction with the claim a federal source of law or a case deciding such a claim on federal grounds; indeed, he did not even label his claim "federal" (*id.*).  Petitioner argued only that the trial court failed to instruct the jury on the essential elements of resisting an officer with and without violence, and this failure constituted fundamental error (*id.*).  Petitioner cited only state cases in support of his claim, and those cases addressed only state law issues, including the standard for determining whether an error was fundamental (*id.*).  While Petitioner asserted, "[b]y definition, fundamental error is a due process violation," he did not clarify that he was arguing a violation of his due process rights guaranteed by the Fifth and Fourteenth Amendments, as opposed to his due process rights guaranteed by Article I, § 9 of the Florida Constitution (*id.* at 19).  Further, the case he cited for this proposition was a state case which was not decided on federal grounds (*id.*)  If Petitioner wished to claim that the trial court's jury instructions denied him the due process of law guaranteed by the Fifth, Sixth, and Fourteenth Amendments, he should have said so in his state court brief.  Because Petitioner did not alert the state courts that his claim was federal in nature, the undersigned concludes he did not satisfy the exhaustion requirement of section 2254.  *See* Duncan, 513 U.S. at 365; Zeigler v. Crosby, 345 F.3d 1300, 1307 (11th Cir. 2003) (finding that the petitioner's federal habeas claims were not raised in the state court when the direct appeal made no reference to the federal constitutional issues raised in the federal habeas petition).

Moreover, any future attempt to exhaust state remedies would be futile under Florida law, since Petitioner may not take a second appeal of his conviction, and a second Rule 3.850 motion

would be subject to dismissal as untimely and successive. *See* Fla. R. Crim. P. 3.850(b), (f). Therefore, Petitioner's jury instruction claim asserted in Ground Two is procedurally defaulted. *See* Bailey, 172 F.3d at 1303.

As previously noted, a procedural default may be excused through a showing of cause for the default and prejudice arising therefrom, *see* Coleman, 501 U.S. at 750, or a demonstration that failure to consider the claim will result in a "fundamental miscarriage of justice," *see* Murray, 477 U.S. at 495–96. Petitioner failed to show he is entitled to federal review under either exception to the procedural bar. Therefore, the court will not review his claim.

C.   Ground Four: "Deprivation of the Sixth and Fourteenth Amendment rights, as secured by the United States Constitution, through ineffective assistance of counsel, and due process; did [sic] prejudice the defense."[14]

In this ground, Petitioner raises two claims of ineffective assistance of counsel. First, he contends counsel was ineffective for failing to collect and present evidence at trial (Doc. 1 at 12–13). Specifically, Petitioner faults counsel for failing to depose Ms. Shinitha Stallworth and Ms. Michelle Rowell and present their testimony at trial (*id.*). Petitioner asserts Ms. Stallworth (an employee of the drug store) and Ms. Rowell (Petitioner's girlfriend who was with him in the drug store) would have testified that Petitioner did not make any physical contact with Deputy Jeffcoat (*id.* at 12). Petitioner also faults defense counsel for failing to publish to the jury the drug store's security video of the events, which also allegedly show he did not have physical contact with Deputy Jeffcoat (*id.* at 13). Petitioner states he raised this claim as Ground VIII in his Rule 3.850 motion (*id.* at 12). He contends the trial court's summary denial of the claim was objectively unreasonable, because he presented a facially sufficient allegation in his post-conviction motion (*id.*).

In Petitioner's second ineffective assistance of counsel claim, Petitioner contends counsel failed to advise him of his right to testify (Doc. 1 at 13). He states if counsel had advised him of his right to testify, he would have testified that he had a heart condition and had recently been released from the hospital (*id.* at 14). He also would have testified he was not "tased" by deputies, as evidenced by the fact that he had no marks, burns, or punctures on his body (*id.*). Petitioner asserts if the jury had heard his testimony, viewed the videotape, and heard the testimony of Ms. Stallworth

---

[14] For organizational purposes, the court will address Ground Four and then Ground Three.

and Ms. Rowell, they would not have convicted him (*id.*).  He states he raised this claim as Ground IX in his Rule 3.850 motion, and it was the subject of the post-conviction evidentiary hearing (*id.* at 13–14).  He contends the state circuit court's denial of the claim was unreasonable  (*id.*).

Respondent argues Petitioner's challenge to manner in which the post-conviction court disposed of his first claim (i.e., summarily) is not cognizable on federal habeas (Doc. 16 at 17–18).  Respondent additionally argues Petitioner failed to show that the state court unreasonably applied Strickland v. Washington, 466 U.S. 668 (1984) in denying either of his claims (*id.* at 21).

       1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 687–88.  If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief.  *Id.* at 697.  Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied.  Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do.'"

Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is or what line of defense must be asserted." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'"  Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

Pursuant to Strickland, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  Strickland, 466 U.S. at 691. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.  Id.  "One of the primary duties defense counsel owes to his client is the duty to prepare himself adequately prior" to a legal proceeding.  Lawhorn v. Allen, 519 F.3d 1272, 1295 (11th Cir. 2008) (quoting Magill v. Dugger, 824 F.2d 879, 886 (11th Cir. 1987)).  Such preparation includes an understanding of the legal procedures and the legal significance of tactical decisions within those proceedings.  Young v. Zant, 677 F.2d 792, 794, 799–800 (11th Cir. 1982) (an attorney's reliance on former law and unawareness of procedure deprived his client of effective assistance).  Counsel's decision whether to call a particular witness is a matter of trial strategy entitled to great deference. Chandler, 218 F.3d at 1314 n.14 (citing Waters v. Thomas, 46 F.3d 1506, 1512, 1518–19 (11th Cir. 1995) (en banc)).  "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would

have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).[15]

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high.  See Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" Id. (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

Additionally, with regard to a defendant's constitutional right to testify in his behalf at trial, it is well established that this right is personal to the defendant and cannot be waived either by the trial court or by defense counsel.  Rock v. Arkansas, 483 U.S. 44, 52, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987).  Competent legal representation requires that counsel advise the criminal defendant of his right to testify or not to testify, the strategic implications of each choice, and that the final decision of whether to testify is the defendant's alone; additionally, counsel must honor his client's decision.  See United States v. Teague, 953 F.2D 1525, 1533 (11th Cir. 1992); Gallego v. United States, 174 F.3d 1196, 1197 (11th Cir. 1999) (citing Teague).  Although it is the defendant's right ultimately to decide whether to testify, counsel has the duty to advise the defendant "in the strongest

---

[15] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

possible terms" not to testify if counsel believes that is the wiser course.  Teague, 953 F.3d at 1533.

> The first prong of [the Strickland] test requires that defendant show that counsel's performance "fell below an objective standard of reasonableness."  *Id.* at 688, 104 S. Ct. at 2065.  Where the defendant claims a violation of his right to testify by defense counsel, the essence of the claim is that the action or inaction of the attorney deprived the defendant of the ability to choose whether or not to testify in his own behalf.  In other words, by not protecting the defendant's right to testify, defense counsel's performance fell below the constitutional minimum, thereby violating the first prong of the Strickland test.  For example, if defense counsel refused to accept the defendant's decision to testify and would not call him to the stand, counsel would have acted unethically to prevent the defendant from exercising his fundamental constitutional right to testify.  Alternatively, if defense counsel never informed the defendant of the right to testify, and that the ultimate decision belongs to the defendant, counsel would have neglected the vital professional responsibility of ensuring that the defendant's right to testify is protected and that any waiver of that right is knowing and voluntary.  Under such circumstances, defense counsel has not acted "'within the range of competence demanded of attorneys in criminal cases,'" and the defendant clearly has not received reasonably effective assistance of counsel.  *See* Strickland, 466 U.S. at 687, 104 S. Ct. at 2064 (quoting McMann v. Richardson, 397 U.S. 759, 770–71, 90 S. Ct. 1441, 1448–49, 25 L. Ed. 2d 763 (1970)).

Teague, 953 F.2d at 1534.

Although an attorney may be ineffective for preventing the accused from testifying, Petitioner must also show that he was prejudiced as a result.  Nichols v. Butler, 953 F.2d 1550, 1553 (11th Cir. 1992).  As in all claims of ineffective assistance of counsel, Petitioner maintains the burden of establishing his contentions and, thus, he must produce something more than a bare, unsubstantiated, self-serving allegation that his counsel prevented him from taking the stand.  Underwood v. Clark, 939 F.2d 473, 476 (7th Cir. 1991).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  Strickland, 466 U.S. at 698, 104 S. Ct. at 2070; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

2.     Federal Review of State Court Decision

a.     Failure to investigate and present evidence

Petitioner raised this claim as Ground VIII in his amended Rule 3.850 motion (Ex. M at 25–27).  In support of this claim, he submitted a statement of Michelle Rowell signed under penalty of perjury (Ex. L at 194).  Ms. Rowell states, in relevant part, she was with Petitioner at the drug store; she saw Deputy Harris shoot Petitioner with a Taser, but it missed him; and she saw Petitioner exit the store without coming into contact with any officer (*id.*).

In the written opinion decision Petitioner's Rule 3.850 motion, the state circuit court correctly identified the Strickland standard as the controlling legal standard (Ex. N at 455–56).  The court found as fact that Ms. Rowell's proposed testimony would have been similar to the trial testimony of a neutral trial witness, Suzy Skipper, a store employee who was near the front door when the incident occurred (*id.* at 465).  Ms. Skipper testified Petitioner appeared to have stumbled into Deputy Jeffcoat (*id.*).  Ms. Skipper indicated she could not tell whether Petitioner's actions were intentional or accidental (*id.*).  The state court determined that if Ms. Rowell had testified Petitioner never contacted any officer in any way, it would have contradicted Ms. Skipper's testimony, which the court characterized as "quite favorable" to the defense (*id.* at 466).  The court further determined that the jury would not have considered Ms. Rowell an unbiased witness because Petitioner admitted she was his girlfriend, and she testified at sentencing that Petitioner was her "sole support," her "second reason for living," and the "foundation that keeps [her] standing." (*id.*).

As to Ms. Stallworth, the court determined that her proposed testimony (according to Petitioner, she would have testified Petitioner did not have contact with any officers and ran out of the store without harming any officer), would have been inconsistent with Petitioner's defense that his contact with Deputy Jeffcoat was unintentional (Ex. N at 466).

As to the video, the court found as fact that prior to trial, defense counsel requested a copy of the video from the State, and the tape was the subject of a discussion between defense counsel, the prosecutor, and the court (Ex. N at 467).  During the discussion, defense counsel stated, "the video that I saw was too chopped up to be able to ascertain what was happening," and the prosecutor agreed, "It's hard to view it. . . . It was only a few second on the surveillance video." (*id.*).  Defense counsel then stated she had been attempting for approximately three months to "get that video to a specialist so we would only have one view from a certain camera as opposed to a chopped up view."

(*id.*).  Further, the prosecutor represented that its copy was "so blurred you can't see it." (*id.*).  Additionally, Deputy Harris testified at trial that he reviewed the tape and "it was just a matter of seconds." (*id.*).  Based upon these findings, the court concluded defense counsel did not perform deficiently with regard to the videotape (*id.*).  The court additionally concluded Petitioner failed to demonstrate he was prejudiced by counsel's failure to introduce the video, because the still photographs taken from the video, which Petitioner submitted with his Rule 3.850 motion, did not negate any of the trial testimony (*id.*).

Initially, to the extent Petitioner challenges the summary manner in which the state court disposed of his claim, he has failed to state a cognizable habeas claim.  It is well established in the Eleventh Circuit that a § 2254 court is not an appropriate forum for a prisoner who wishes to challenge the process afforded him in state collateral proceedings.  This is so, because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself.  *See* Quince v. Crosby, 360 F.3d 1259, 1261–62 (11th Cir. 2004) (affirming district court's denial of habeas relief based on state court judge's refusal to recuse himself from the Rule 3.850 hearing, explaining "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (per curiam) (concluding, with regard to § 2254 claim that petitioner's due process rights were violated when state post-conviction court held no evidentiary hearing and failed to attach appropriate portions of record to its opinion, that claim "goes to issues unrelated to the cause of petitioner's detention [and] does not state a basis for habeas relief").  Therefore, to the extent Petitioner's claim challenges only the process afforded him in the state collateral review proceeding and does not present a constitutional challenge to his confinement, it does not provide a basis for federal habeas relief.

To the extent Petitioner presents a substantive challenge to the state court's denial of his claim, he has failed to show he is entitled to relief under § 2254(d).  Petitioner has not proffered any evidence to rebut the state court's factual findings, and a review of the state court record confirms they are correct.  Therefore, Petitioner is entitled to relief only if he demonstrates that the state court's denial of the claim was an unreasonable application of Strickland.

With regard to Ms. Stallworth, Petitioner has presented no factual support for his assertions as to the content of her testimony or her availability to testify at trial.  Petitioner's speculation on these matters is insufficient to demonstrate that counsel's failure to depose her and present her testimony at trial was unreasonable.  Petitioner's unfounded assertions are likewise insufficient to demonstrate a reasonable probability that the outcome of trial would have been different had the jury heard her testimony.  Therefore, the state court's denial of this aspect of his claim was not unreasonable.

Similarly, with regard to the videotape, although Petitioner asserts the videotape would have shown he did not have physical contact with Deputy Jeffcoat, he has not presented any factual support for this assertion.  None of the still photographs he submitted with his Rule 3.850 motion support this proposition; and Petitioner has not submitted other evidence of the content of the tape.  Further, the record of the discussion between defense counsel, the prosecutor, and the court prior to trial (Ex. C at 11–12) suggests the tape was of little, if any, evidentiary value.  Defense counsel and the prosecutor both described the videotape as shifting from one camera to another without a break, rendering it of no value in determining the events that were occurring (*id.*).  Therefore, Petitioner failed to show that defense counsel's decision not to use the videotape was unreasonable, or that there was a reasonable probability of a different outcome at trial had the jury seen the video.

Finally, as to counsel's failure to present Ms. Rowell's testimony, the state court reasonably concluded that the jury would not have perceived her testimony as unbiased, since she was Petitioner's girlfriend.  Furthermore, Ms. Rowell's testimony would have contradicted Ms. Skipper's testimony, which was helpful to the defense in that she was an unbiased witness whose testimony cast doubt on the State's theory that Petitioner intentionally ran into Deputy Jeffcoat.  Therefore, Petitioner failed to establish that the state court's determination that he failed to satisfy Strickland was unreasonable.

b.    Failure to advise Petitioner of right to testify

Petitioner raised this claim as Ground IX in his amended Rule 3.850 motion (Ex. M at 230–31).  The state circuit court held an evidentiary hearing on this claim (Ex. N at 421–53).  In the court's written order denying this claim, the court noted that Petitioner's trial counsel, Patrece

Cashwell, and Petitioner testified at the hearing (*id.* at 468).  The court found as fact that Ms. Cashwell testified she discussed with Petitioner the advantages and disadvantages of his taking the stand on his own behalf, and she advised him that his prior convictions would "come to light" if he testified (*id.*).  The court found Ms. Cashwell's testimony credible and determined that Ms. Cashwell properly informed Petitioner regarding his right to testify (*id.*).  The court therefore concluded Petitioner was not entitled to relief on this claim of ineffective assistance of counsel (*id.*).

Petitioner argues the state court's credibility determination was based upon an unreasonable determination of the facts because he testified at the evidentiary hearing that he was not properly advised of his right to testify, Ms. Cashwell did not testify with absolute certainty that she adequately informed him, and there was no basis for the state circuit court to find counsel's testimony more credible than his (Doc. 23 at 5).

Determinations of credibility are best made by the trial court judge who can assess the demeanor and candor of the witnesses.  Gore v. Sec'y for Dep't of Corr., 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing Rice v. Collins, 546 U.S. 333, 341–42, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")); *see also* Baldwin v. Johnson, 152 F.3d 1304, 1317 (11th Cir. 1998) (citing Marshall v. Lonberger, 459 U.S. 422, 434, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983) ("Title 28 U.S.C. § 2254(d) gives federal habeas [corpus] courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.")); Smith v. Kemp, 715 F.2d 1459, 1465 (11th Cir. 1983) ("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing.").

Review of the record in this case yields no suggestion that the trial court's findings of fact made during the state post-conviction proceeding were not supported by the record.  At the evidentiary hearing on Petitioner's Rule 3.850 motion, Ms. Cashwell testified she discussed with Petitioner the fact that the State could ask him how many times he had been convicted of a felony; whereas, if he did not testify, the jury would never know he was a convicted felon (Ex. N at 427).

Ms. Cashwell testified she also discussed with Petitioner her belief that when a case comes down to a credibility issue between the State's witness and the defendant, the most effective strategy is to keep the jury's focus on the State's witnesses and the State's burden of proof rather than the jury weighing the credibility of a convicted felon versus law enforcement officers (*id.* at 428).   Ms. Cashwell testified she likely did not discuss Petitioner's testifying in terms of his constitutional right to do so, but they discussed whether he wished to testify or not (*id.* at 428–29).   She testified she could not recall whether Petitioner stated during that discussion that he did not want to testify, because her practice was to advise clients to wait until the close of the State's case to make their decision (*id.* at 429).   She stated she could not specifically recall discussing the issue with Petitioner at the close of the State's case, but she could not imagine <u>not</u> having the discussion with him because she always had that discussion with her clients (*id.*).   When asked whether she recalled whether Petitioner made the decision not to testify, Ms. Cashwell responded that if he did not testify, then he made the decision not to testify, and she would not have forced him to testify or told him that he could not testify (*id.* at 430).   Ms. Cashwell then testified that she specifically recalled discussing with Petitioner what additional information he would give if he testified (*id.* at 430).   She stated a State's witness had just testified positively for the defense by stating she saw the impact between Petitioner and Deputy Jeffcoat and could not state whether it was intentional or accidental (*id.* at 430–31).   She and Petitioner discussed that if he testified and stated the impact was accidental, it would be of little benefit to the defense compared to the cost of revealing his prior felony convictions (*id.* at 431).

Petitioner cross-examined Ms. Cashwell.  He began his first question by stating that he and Ms. Cashwell "never had a discussion about me testifying," but then acknowledged they discussed it, ". . . every time I mentioned something about testifying, yeah, you're right, you did say that if I testified—you are trying to keep them from knowing I'm a bad guy, all of my convictions are going to come out." (*id.* at 431–32).  Petitioner's cross-examination continued:

> Q [by Petitioner].  I want to ask her what, you know—what the conversation really was between me and you.  Did you really want to know if I wanted to testify or not?
>
> A.  My—

Q.  Is it like I didn't or I did?

A.  My memory of our conversations was that when we were discussing trial, which witnesses to put forward, and we were talking about whether or not you were going to testify [sic].  I can't make that decision for you.  So what I told you was, and you kind of remember that as well, was that if you testify, you've got to ask yourself two questions:  What are you adding and what are you subtracting—
. . . .

A.  . . . If you remember, I told you what you would be adding is what, that you did touch Jeffcoat.  That was a fact we had to deal with because we had this independent witness saying they saw the impact.  So the only question was whether it was an intentional touching or an accidental touching, okay.  So if you testified that it was an accidental touching, then you would have maybe this much weight, according to you.  And then on the other side of the issue we would have them know about—I forgot how many felonies you had, but you had a number of felonies.  So do we want to risk the jury knowing that you were a convicted felon or you're just a nice gentleman that's sitting there at the Eckerd's that night and accidentally ran into a law enforcement officer?

So we talked about it, I said, you've got to weigh those two issues.  You tell me which way you want to go with it, but that's what I told you.

Q.  But did I also tell you that it didn't matter because I wanted to tell my side of the story?  Because what the officer was saying to me—what they was [sic] saying about me wasn't true, and I wanted to tell my side of the story.  I wanted to get up and tell my side of the story.  You tell me if I do, we're going to be like a weight [sic].  I mean, I don't get to make the decision that I want to make to testify.  Why?  That's what I'm saying.

A.  No, no.  I never made that decision for you.  That was your decision.  if you had said to me, I hear what you're saying and I want to testify, you would have been testifying.

(Ex. N at 432–34).  During the hearing, the state circuit court noted that the trial transcript included the charge conference, during which the judge asked defense counsel whether she wanted the standard jury instruction regarding the defendant's not testifying, and Ms. Cashwell responded that she wanted that instruction (*id.* at 436).  Ms. Cashwell then told the post-conviction court:

One thing I will tell the Court is that Mr. Jones had absolutely no problem communicating with me or making his wishes and desires known.  And I cannot imagine you [Petitioner] sitting there, if we're talking about a jury instruction for defendant not testifying and if you had wanted to testify, elbowing me and say, hey, wait a minute.  Because you were not shy—Mr. Jones was not shy Your Honor.

(*id.* at 436–37).

Petitioner then testified at the hearing. His only testimony relevant to the issue of counsel's advising him of his right to testify was that he wanted to tell his side of the story, and Ms. Cashwell was aware that he wanted to do so (*id.* at 438–39). He then stated:

> The reason—I never told her I didn't want to testify. The reason why I didn't push it because she tell me [sic] she don't [sic] want the jury to look at me as a bad guy. They are going to find out about all of my convictions, my prior conviction that I just got out of prison. She don't want them looking at me that way.
> . . . .
> . . . and I wanted to help my own self and I didn't get—it was don't take the stand, they are going to find out you're a bad guy. You're a convicted felon, your past record is going to come out and—but I didn't care at that time. I didn't care what they found out about me. I just wanted to take the stand and tell my side after hearing what they said about me how they are making me to be such a bad guy.

(*id.* at 439–41).

Petitioner has failed to present clear and convincing evidence to rebut the state court's finding that Ms. Cashwell properly informed Petitioner regarding his right to testify on his own behalf. Accordingly, this finding is presumed correct. *See* 28 U.S.C. § 2254(e)(1); Miller-El, 537 U.S. at 340. In light of this finding, Petitioner failed to establish that counsel performed deficiently by failing to advise him of his right to testify.

Additionally, Petitioner has failed to show that Ms. Cashwell's recommendation that Petitioner not testify was unreasonable. The advice provided by a criminal defense lawyer on whether his client should testify is "a paradigm of the type of tactical decision that cannot be challenged as evidence of ineffective assistance." Hutchins v. Garrison, 724 F.2d 1425, 1436 (4th Cir. 1983); Rogers-Bey v. Lane, 896 F.2d 279, 283 (7th Cir. 1990) (concluding that counsel's advice not to testify, based in part on erroneous belief that defendant could be impeached by prior conviction, was not deficient performance); Reyes-Vejerano v. United States, 117 F. Supp. 2d 103, 108–09 (D.P.R. 2000) ("Absent evidence of coercion, legal advice concerning the defendant's right to testify does not constitute [ineffective assistance of counsel]."). In the instant case, Ms. Cashwell's recommendation that he not testify was a sound strategy, in light of the favorable testimony of the State's witness and the detrimental effect of revealing to the jury the fact that Petitioner was a convicted felon (his sentencing scoresheet confirms that he had previously been

convicted of three felonies (Ex. L at 44)).  On this record, counsel's performance was far from deficient.  As such, the state court's determination that counsel did not render unconstitutionally ineffective assistance in advising Petitioner concerning his right to testify was not based upon an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of clearly established federal law.

>D.    Ground Three:  "Deprivation of the Fifth, Sixth and Fourteenth Amendment rights, as secured by the United States Constitution, through numerous errors in Petitioner's motion for judgment of acquittal and jury instructions; created cumulative error that deprived Petitioner of the right to due process and a fair trial, guaranteed under the United States Constitution."

In Ground Three, Petitioner argues that even if the errors asserted in his previous grounds for relief do not individually warrant federal habeas relief, their cumulative effect rendered his trial unfair and, therefore, entitles him to federal relief (Doc. 1 at 11; Doc. 23 at 3–4).  Additionally, in his argument on Ground Four, *supra*, Petitioner contends the errors of his trial counsel combined with the trial court errors to deprive him of his constitutional rights to due process, equal protection, and effective assistance of counsel (*id.* at 15).

Respondent contends Petitioner failed to exhaust this claim (Doc. 16 at 15–16).  Respondent acknowledges that Petitioner raised a claim of cumulative error on direct appeal and cited the Constitution "in passing" but contends this passing reference was insufficient to raise a federal claim in the state courts (*id.*).  Respondent additionally argues Petitioner failed to show error with respect to his previous grounds for relief; therefore, he cannot establish cumulative error (*id.* at 16–17).

On direct appeal of his conviction, Petitioner raised as Issue IV a claim that the "numerous errors in the motions for judgment of acquittal and the jury instructions" created cumulative error and deprived him of his rights to due process and a fair trial guaranteed by the Fifth, Sixth, and Fourteenth Amendments and provisions of the Florida Constitution (Ex. D at 44).  The First DCA affirmed the judgment of conviction without written opinion.

The Supreme Court has not recognized the cumulative error doctrine in the context of ineffective assistance of counsel claims.[16]  Although the Eleventh Circuit has noted, on direct appeal

---

[16] The Eleventh Circuit recently noted "the absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel."  Forrest v. Fla. Dep't of Corr., 2009 WL 2568185, at *4 (11th Cir. Aug. 21, 2009) (unpublished).  The court cautioned that the Supreme Court has held that "there is generally no basis

of a federal conviction, that the cumulative effect of several errors that are harmless by themselves could so prejudice the defendant's right to a fair trial that a new trial may be necessary,[17] the Eleventh Circuit has never expressly recognized a freestanding "cumulative effect" claim, based upon the assertion that alleged errors of the trial court, defense counsel, or the State, or a combination thereof, rendered the trial fundamentally unfair even though such errors were individually harmless or non-prejudicial, as cognizable under § 2254.  *See, e.g.,* Conklin v. Schofield, 366 F.3d 1191, 1210 (11th Cir. 2004) (applying pre-AEDPA standard of review and denying claim that trial court errors and conduct of trial counsel combined to rob petitioner of fair trial and sentencing, but not relying upon Supreme Court precedent for its decision); Sims v. Singletary, 155 F.3d 1297 (11th Cir. 1998) (applying pre-AEDPA standard of review and holding that district court erred in finding that cumulative guilt stage errors prejudiced petitioner during penalty phase); Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cir. 1997) (applying pre-AEDPA standard of review and declining petitioner's invitation to entertain "cumulative error" claim because petitioner's trial was not fundamentally unfair); Dobbs v. Kemp, 790 F.2d 1400, 1505 (11th Cir. 1986) (applying pre-AEDPA standard of review and denying petitioner's claim that improper prosecutorial argument and evidentiary errors rendered trial fundamentally unfair and citing Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1973)); Bronstein v. Wainwright, 646 F.2d 1048, 1056 (5th Cir. 1981) (same).[18]

---

for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt."  *Id.* at 5 (quoting United States v. Cronic, 466 U.S. 648, 659 n.26, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)).

[17] *See* United States v. Ramirez, 426 F.3d 1344, 1353 (11th Cir. 2005) ("[T]he 'cumulative effect' of multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible.") (quoting United States v. Thomas, 62 F.3d 1332, 1343 (11th Cir.1995)), United States v. Adams, 74 F.3d 1093, 1099–1100 (11th Cir. 1996) (citing United States v. Preciado-Cordobas, 981 F.2d 1206, 1215 n.8 (11th Cir. 1993)).

[18] The law of the other circuit courts of appeals is mixed on the issue of whether a claim of "cumulative effect" or "cumulative error" is cognizable on federal habeas.  The Fourth, Sixth and Eighth Circuits do not recognize cumulative error claims on federal habeas.  *See* Williams v. Anderson, 460 F.3d 789, 816 (6th Cir. 2006) (claims of cumulative error are not cognizable on federal habeas because the Supreme Court has not spoken on this issue); Fisher v. Angelone, 163 F.3d 835, 852–53 (4th Cir. 1998) (ineffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively); Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief.").  The Ninth Circuit recognizes cumulative error claims and expressly recognized Chambers v. Mississippi, 410 U.S. 284

In any event, cumulative error analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors.  *See* <u>United States v. Waldon</u>, 363 F.3d 1103, 1110 (11th Cir. 2004) (where no individual errors have been demonstrated, no cumulative errors can exist); <u>United States v. Barshov</u>, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."); <u>Mullen v. Blackburn</u>, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit.  We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it.  Twenty times zero equals zero."); *see also* <u>United States v. Hall</u>, 455 F.3d 508, 520 (5th Cir. 2006); <u>Mancuso v. Olivarez</u>, 292 F.3d 939, 957 (9th Cir. 2002) (where there is no single constitutional error, nothing can accumulate to the level of a constitutional violation); <u>United States v. Hardy</u>, 224 F.3d 752, 757 (8th Cir. 2000); <u>Angelone</u>, *supra*; <u>Moore v. Reynolds</u>, 153 F.3d 1086, 1113 (10th Cir. 1998); <u>United States v. Rivera</u>, 900 F.2d 1462, 1471 (10th Cir. 1990) ("[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."); <u>United States v. Conteh</u>, 234 Fed. Appx. 374, 2007 WL 1229043 (6th Cir. 2007).  Thus, Petitioner must show error with respect to at least two of his individual claims.

As previously discussed, none of the alleged errors of trial counsel, considered alone, approaches the threshold standard of ineffective assistance of counsel.  Likewise, none of the claims of trial court error approached the threshold of fundamental unfairness.  Taken together, their cumulative effect also falls far short of depriving Petitioner of effective assistance of counsel or a fundamentally fair trial.  Furthermore, the remaining claims were procedurally barred.  Therefore, Petitioner is not entitled to federal habeas relief on this "cumulative effect" claim.  *See* <u>Bronstein v. Wainwright</u>, 646 F.2d 1048 (11th Cir. 1981) ("[A] state trial must be so 'fundamentally unfair'

---

(1973) as the clearly established federal law governing such claims.  *See* <u>Parle v. Runnels</u>, 505 F.3d 922, 928–29 (9th Cir. 2007).  The Tenth Circuit recognizes cumulative error claims and recognized <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993) as the clearly established federal law on this issue.  *See* <u>Darks v. Mullin</u>, 327 F.3d 1001, 1018 (10th Cir. 2003). The Second and Seventh Circuits recognize cumulative effect analysis of individual claims of ineffective assistance of counsel in applying the prejudice prong of <u>Strickland</u>.  *See* <u>Williams v. Washington</u>, 59 F.3d 673, 682–84 (7th Cir. 1995); <u>Rodriguez v. Hoke</u>, 928 F.2d 534 (2d Cir. 1991).

as to amount to a denial of due process before federal habeas relief can be appropriately applied.") (internal quotation and citation omitted)); *see also* Walls v. McNeil, No. 3:06cv237/MCR, 2009 WL 3187066, at **30–31 (N.D. Fla. Sept. 30, 2009) (unpublished) (same).

V.      CERTIFICATE OF APPEALABILITY

        As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

        The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

        The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

        Accordingly, it is **ORDERED**:

        The clerk of court is directed to change the docket to reflect that Edwin G. Buss is substituted for Walter A. McNeil as Respondent.

        And it is respectfully **RECOMMENDED**:

        1.      That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

        2.      That a certificate of appealability be **DENIED**.

        At Pensacola, Florida, this 13th day of June 2011.


                                /s/ Elizabeth M. Timothy
                                **ELIZABETH M.  TIMOTHY**
                                **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).